## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

JOHN COLE                                  CIVIL ACTION NO. 21-3968

VERSUS                                     JUDGE ELIZABETH E. FOOTE

QUALITY CARRIERS INC.                      MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendant Quality Carriers Inc. ("Quality Carriers"). [Record Document 27]. The motion has been fully briefed. For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.

### I.    Background

In September 2018, Plaintiff John Cole ("Cole") began working as a driver at Quality Carriers's Fort Worth terminal. *See* Record Documents 1 and 12 at ¶¶ 8, 11. In February 2019, Cole was transferred to Quality Carriers's Bossier City terminal (hereinafter, "Quality Carriers 192") due to overstaffing at the Fort Worth terminal. *Id.* at ¶¶ 14-15, 18. Plaintiff alleges that he was one of five drivers chosen to drive a "pre-loader"[1] schedule. Record Document 32 at 2.

---

[1] The parties use "pre-loader" and "preloader" interchangeably. In compliance with a Court directive, the parties filed a joint glossary of terms to assist the Court in understanding the industry's terms of art. *See* Record Document 38 at 2. In the glossary, the parties refer to the position as "pre-loader." The Court will adopt the same spelling. According to the parties, a pre-loader is a local driver that returns to his home base at the end of every shift. *Id.* A pre-loader may perform the following tasks:

- Move empty and loaded trailers to and from a tank wash[;]
- Move empty and loaded trailers to and from the terminal to repair shops[;]
- Transport an empty trailer to a local or regional shipper for loading[;]
- Complete local deliveries[; and]
- Drop loaded trailers at the terminal or a tank wash for a different driver to pick up for delivery.

*Id.*

In June 2019, Cole claims that he spoke to his terminal manager, John Beasely ("Beasely"), to request a transfer to a different driving schedule because his "scarce" pre-loader work schedule resulted in him not making enough money. Record Document 32 at 2. Cole alleges that Beasley asked that he remain on the pre-loader schedule because "he was dependable and always on time." *Id.* at 3. Cole further claims that Beasley shared that an increase in pre-loader compensation was imminent and that Cole needed to "just keep doing it man, just hang in there." *Id.* at 3 (citation and quotation marks omitted). Two weeks later, Plaintiff alleges that Beasley removed him from pre-loader work because he was "always late," and replaced Cole, a black man, with a white driver. *Id.* at 3.

On June 25, 2019, Cole filed a complaint with human resources. Record Document 32 at 4. Cole alleged that his removal from the pre-loader schedule and replacement with a white driver constituted discrimination. *Id.* Michelle Ernst ("Ernst"), Director of Human Resources at Quality Carriers, investigated Cole's claim of discrimination. Record Documents 27-1 at 2 and 32 at 5. Cole averred that Beasley told him that he had been removed from pre-loader work due to timeliness concerns, which confused Cole considering the recent compliment allegedly offered by Beasley. Record Document 1 at ¶ 28. According to Defendant, Ernst found that GPS records established that Cole was "late on at least one occasion . . . but determined that the records were inconclusive regarding his timeliness on other occasions at issue. [Quality Carriers] determined that Cole would benefit from another opportunity" and reinstated him as a pre-loader by July 2019. Record Document 27-1 at 2.

Upon re-instatement to the pre-loader position, Cole alleges that someone at Quality Carriers gave him a "fake" wash ticket,[2] resulting in his delivery being rejected and a verbal warning

---

[2] The parties define a wash ticket as:

2

from management. Record Document 32 at 8. Cole claims that he reported this alleged incident of retaliation to human resources, who identified a white scheduler at Quality Carriers 192 as the individual responsible for creating the "fake" wash ticket. *Id.* at 9. Quality Carriers's investigation into Cole's retaliation claims found no evidence of racial discrimination or retaliation, but instead, revealed an outdated process carried over from a different company that was inconsistent with its processes and procedures. *Id.*

Cole avers that as a direct result of his complaint of discrimination, human resources directed management at Quality Carriers 192 to change its processes for scheduling pre-loaders and conducting internal investigations. Record Document 32 at 7. Instead of complying with those directives, Cole alleges that management decided to "eliminat[e] all pre-loader positions on paper, while still hand-picking the employees that they would allow to do pre-loader work." *Id.* Quality Carriers says this was not retaliation, but rather, that the position was eliminated in February 2020 because it was no longer economically practical to have a dedicated group of pre-loader drivers at Quality Carriers 192. Record Document 27-1 at 2. It further avers that this decision impacted all pre-loader drivers "black and white alike." *Id.*

---

. . . a certificate of cleanliness and assures the driver, shipper and hauling companies that a thorough internal cleaning has been completed and should prevent the new cargo from being contaminated with residues from the previous unloaded cargo. A wash ticket is presented after an internal cleaning of a chemical tanker has been performed. A wash ticket is like a chain of custody for the customer. The driver is responsible for ensuring that the wash ticket has the correct date and reflects the appropriate cleaning process. Drivers should also inspect the tank to ensure that it is clean, dry and odor free before they leave the wash facility or before they go to the shipper to be loaded. Drivers are advised to inform dispatchers of any issues so that they can be remedied before the trailer goes to the customer. This could even require a rewash of the trailer.
Record Document 38 at 3.

Cole, who was no longer driving the pre-loader schedule, claims that schedulers began assigning black drivers work that was more difficult, unpredictable, and with longer drive times than their white counterparts. Record Document 1 at ¶¶ 46-47. Cole argues that he was scheduled for drives that management knew he would be forced to decline, including loads transporting hazardous materials like jet fuel and kerosene. *Id.* at 10-11. Cole avers that he did not have the requisite training or equipment to transport hazardous materials. *Id.* at 11. Cole alleges that the unsafe working conditions forced him to continue to refuse these loads. *Id.* Quality Carriers argues that despite its efforts to accommodate him, Cole consistently refused assignments "without excuse." Record Document 27-1 at 3. Quality Carriers further avers that, with respect to the assignments that Cole deemed to be "hazardous," none of the loads required a respirator or any other safety equipment, but even if they did, Cole possessed the requisite training and equipment to complete these drives. *Id.* at 9-11.

Quality Carriers terminated Cole in May 2020. Record Document 1 at ¶ 65. On December 18, 2020, Cole filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights. *Id.* at ¶ 9. On August 17, 2021, Cole requested a notice of right to sue from the EEOC. *Id.* at ¶ 10. Cole then filed this suit in federal court on November 15, 2021, alleging employment discrimination and retaliation pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964[3] ("Title VII"), and Louisiana Employment Discrimination Law § 23:332. *Id.* at ¶¶ 68-98.

## II.   **Motion for Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[3] Codified as 42 U.S.C. § 2000e.

judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322-23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

### III.    Law and Analysis

Cole brings employment discrimination and retaliation claims under 42 U.S.C. § 1981, Title VII, and Louisiana Employment Discrimination Law § 23:332. Cole does not explicitly enumerate which incidents he believes were discriminatory in nature and which were retaliation for his report of discrimination. The Court interprets Cole's complaint to allege a single claim of discrimination—when he was temporarily removed from the pre-loader schedule—and two claims of retaliation—the first being Cole's final removal from the pre-loader schedule and the second being Cole's termination of employment. The Court will address Cole's discrimination and retaliation claims below.

### a.  Discrimination[4]

Employment discrimination claims brought under 42 U.S.C. § 1981, Title VII, and Louisiana Employment Discrimination Law § 23:332 are analyzed under the same analytical framework. *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999); *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 326 (5th Cir. 2008); *Alleman v. La. Dep't of Econ. Dev.*, 698 F. Supp. 2d 644, 656 (M.D. La. Mar. 17, 2010). Under Title VII, an employer may not "discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). When, as in this case, a plaintiff offers only circumstantial evidence of discrimination, the three-step *McDonnell Douglas* framework applies. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

---

[4] In its motion for summary judgment, Quality Carriers alleges that Cole failed to exhaust his administrative remedies with the EEOC in what it interprets to be a claim of pay discrimination. Record Document 27-1 at 12. The Court does not interpret Cole's discussion of pay to allege a separate claim of pay discrimination, but instead, to support his assertion that he was replaced with a white driver so that the white driver may benefit from the increased pre-loader compensation. Accordingly, Defendant's motion for summary judgment pertaining to this issue is **DENIED**.

(1973). Under this framework, a plaintiff must first assert a prima facie case of discrimination, which, if established, creates a presumption of discrimination. *Wallace*, 271 F.3d at 219. Next, "[t]he employer must [] produce a legitimate nondiscriminatory reason for the adverse employment decision." *Id.* When the employer provides a legitimate reason, the presumption of discrimination dissipates. The plaintiff must then prove that the employer's given reason for the adverse employment action was pretextual and that he was discriminated against because of his protected status. *Id.* at 219-20.

i.   First Prong: Prima Facie Discrimination

The first step requires Cole to present a prima facie case of race discrimination. To do so, he must show that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Cole is a black driver who was temporarily removed from the pre-loader schedule. *See* Record Documents 12 at ¶ 8, 27-1 at 6. Consequently, Cole has established the first and third elements. Quality Carriers has not argued that Cole was unqualified for the pre-loader position. *See* Record Document 32 at 2. Cole contends that not only does the record demonstrate his qualifications for the role, but also that he was personally selected from a pool of seventy-two other candidates to complete pre-load work at Quality Carriers 192. The Court finds that the second element has been satisfied.

Finally, it must be determined whether Cole was replaced by or treated differently than other drivers outside of his protected class. Cole alleges that he was replaced by a white driver, Tim

Cole.[5] Record Document 32 at 2. Quality Carriers argues that Cole is unable to prove Tim Cole replaced him, as Tim Cole was only temporarily assigned to the pre-loader position because a personal issue required him to be closer to home. Record Document 27-1 at 6. Beasley's deposition testimony confirms that there is a genuine issue of fact regarding Tim Cole's alleged replacement of Cole. During his deposition, Beasley was asked:

> Q: Can I -- all I'm asking right now is a simple yes or no question. Was [Tim] Cole
>
>     previously a road driver, a long haul driver at that -- before?
>
> A: Yes.
>
> Q: And then was he then placed into the preload position?
>
> A: Yes.
>
> Q: And that he took the responsibilities that John Cole had?
>
> A: Yes.

Record Document 32-3 at 88:4-13. While this testimony does not confirm that Tim Cole replaced Cole, it raises additional questions about the extent to which Tim Cole assumed Cole's pre-loader responsibilities, the answers to which would assist a fact finder. Those questions include whether Tim Cole took jobs that would have been assigned to Cole, whether Tim Cole continued to work as a pre-loader after Cole was reinstated to the schedule, and how the timing of Tim Cole's transfer to the pre-loader schedule overlaps with Cole's temporary removal. Without the answers to these questions, Plaintiff has failed to present a prima facie case of discrimination. However, as will be explained in further detail below, even if this factual dispute did not exist, Plaintiff is unable to meet his summary judgment burden in establishing the third prong of the *McDonnell Douglas* framework.

---

[5] Though they share a last name, Plaintiff John Cole and Tim Cole appear to bear no relation.

ii.   Second Prong: Legitimate, Nondiscriminatory Reason

Once Cole carries his burden of establishing a prima facie case of discrimination, the second step in the *McDonnell Douglas* framework requires Quality Carriers to offer a legitimate, nondiscriminatory reason for taking an adverse employment action against Cole. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). To do so, it "must provide both 'clear and reasonably specific reasons' for its actions." *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (quoting *Tex. Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981)). This is a burden of production, not persuasion, and "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

Quality Carriers claims that it temporarily removed Cole from the pre-loader schedule because of performance issues. Record Document 27-1 at 6. Specifically, Quality Carriers avers that there were several occasions between June 6, 2019, and June 16, 2019, where Cole was late in picking up a scheduled load. *Id.* Furthermore, Quality Carriers claims that Tim Cole was temporarily assigned to the pre-loader schedule because he needed to care for his wife. *Id.* These reasons, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's*, 509 U.S. at 509. Quality Carriers has met its burden and satisfied the second prong of the *McDonnell Douglas* framework.

iii.   Third Prong: Pretext for Discrimination

Because Quality Carriers has produced a legitimate, nondiscriminatory reason for its decision to temporarily remove Cole as a pre-loader, the third step in the *McDonnell Douglas* analysis requires Cole to show that Quality Carriers's stated reason for the adverse employment action is false or unworthy of credence. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing *Laxton v. Gap Inc.,* 333 F.3d 572, 538 (5th Cir. 2003)). In other words, Cole must be

able to demonstrate that Quality Carriers's explanation for the adverse employment action is pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Cole cannot prove that Quality Carriers's decision is "'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason" for Quality Carriers's decision. *St. Mary's*, 509 U.S. at 515 (emphasis in original). Cole must present "substantial evidence" that Quality Carriers's proffered reason for his temporary removal is pretext for racial discrimination. *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021) (quoting *Laxton*, 333 F.3d at 578). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (quoting *Laxton*, 333 F.3d at 579) (quotation marks omitted). "A defendant may nonetheless be entitled to summary judgment if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Moore v. Lubbock State Supported Living Ctr. by Tex. Health & Hum. Servs.*, 22-10829, 2023 WL 3851844 at *4 (5th Cir. 2023) (citing *Reeves*, 530 U.S. at 148) (internal quotation marks omitted).

Even at the summary judgment stage, where the Court must view all the available evidence in the light most favorable to the plaintiff, Cole fails to provide "substantial evidence" that Quality Carriers's proffered reasons for temporarily removing him are pretext for race discrimination. In his opposition, Cole advances two arguments in support of his claim that Quality Carriers's proffered reasons for his temporary removal—the timeliness issues and Tim Cole's desire to temporarily work closer to home to help care for his wife—are pretextual.[6] First, Cole argues Tim

---

[6] Cole cites to four pages in Defendant's motion for summary judgment where he believes that Quality Carriers provides two additional "excuses" for his temporary removal. *See* Record Document 32 at 15 (citing Record Document 27-1 at 3-7). In reading Defendant's motion—

Cole was not temporarily assigned to the pre-loader position to be closer to home to care for his wife. Record Document 32 at 14-15. In support of this claim, Plaintiff cites to three pages of his deposition testimony where he testifies that his coworkers at Quality Carriers 192 told him that it was Tim Cole's stepfather who required additional care, which was impossible because Tim Cole's stepfather had already passed away "multiple times." *Id.* at 14-15 (citing Record Document 32-2 at 86-88).

Second, Cole argues that his testimony and "other evidence" prove that he was removed from the schedule not because of timeliness, but because Quality Carriers wanted a white driver to benefit from the higher pre-loader compensation. *Id.* at 14. However, Plaintiff does not cite to any documents or facts in the record in support of his assertion. Instead, he simply claims that "Defendant was ordered to place him back into preloading because [its] purported reasons [for his removal] were deemed unsupported and fabricated." *Id.* at 15.

While a party's own deposition can be sufficient evidence at summary judgment, Cole's testimony is just a reiteration of his allegations. In a Title VII case, the Fifth Circuit has held that "self-serving evidence"—which includes depositions, declarations, and affidavits—is sufficient evidence if it is based on personal knowledge, admissible evidence, the declarant is deemed competent to testify about the issue, and the facts presented are "particularized, not vague or conclusory." *See Guzman v. Allstate*, 18 F.4th 157, 161 (5th Cir. 2021) (citing Fed. R. Civ. P. 56(c)(4); *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013)). The "evidence" presented in Cole's deposition is not based on personal knowledge; rather, the evidence consists of statements shared by Cole's coworkers that have not been substantiated by facts in the record. In other words,

---

including those four pages—the Court does not find that Quality Carriers proffers those two reasons as further explanation for Cole's temporary removal.

Cole lacks personal knowledge, and the statements made by his coworkers constitute hearsay. Further, Cole fails to enunciate what particular facts in the record lead him to believe that Tim Cole was not placed onto the pre-loader schedule because of family issues, that Quality Carriers wanted a white man to benefit from the higher compensation, or why Quality Carriers's investigation into the timeliness issue is not to be believed. In summary, Cole fails to provide substantial evidence that Quality Carriers's proffered reasons are pretext for discrimination. Plaintiff's discrimination claim cannot survive summary judgment, and Defendant's motion is **GRANTED** with respect to this issue.

### b. Retaliation

As previously mentioned, the Court interprets Cole's complaint to raise two claims of retaliation. Retaliation claims brought under 42 U.S.C. § 1981, Title VII of the Civil Rights Act, and Louisiana Employment Discrimination Law § 23:332 are analyzed under the same analytical framework. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002); *McCoy*, 492 F.3d at 556 n.4. "A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013); *see McDonnell Douglas*, 411 U.S. at 802. Like a race discrimination claim, a plaintiff must first establish a prima facie case of retaliation. *Royal*, 736 F.3d at 400 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007)). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Id.* The burden then shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* At the pretext stage, the plaintiff must demonstrate "but-for causation." *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243-44 (5th Cir. 2019).

Quality Carriers alleges that Cole failed to exhaust the administrative remedies available with the EEOC for his retaliation claims. Record Document 27-1 at 12. It also argues that there are no genuine issues of fact concerning Cole's claims that the eradication of the pre-loader position and his termination from Quality Carriers were done in retaliation for his discrimination complaint. *Id.* The Court will address each issue below.

i.   Exhaustion of Administrative Remedies

Quality Carriers alleges that Cole failed to exhaust his administrative remedies with the EEOC. *Id.* In cases alleging employment discrimination and retaliation, a plaintiff must exhaust all administrative remedies before he can file suit in federal court. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). "Filing a timely charge of discrimination with the EEOC is a precondition to filing a civil action in federal court." *Mayes v. Off. Depot, Inc.*, 292 F. Supp. 2d 878, 887 (W.D. La. 2003) (citing *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982)). In "deferral states," such as Louisiana, a plaintiff is afforded 300 days from the alleged discrimination to file a charge, provided it includes a state law discrimination claim. *Id.* at 888; La. R.S. § 23:303. A sufficient charge should contain "[t]he full name and contact information of the person against whom the charge is made" and "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a). Title VII claims brought in federal court are not limited to "the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)).

Quality Carriers argues that Cole's EEOC charge alleged only that it "terminated his employment in response to his alleged refusal to haul a dangerous load," and not that he was

terminated in retaliation for his complaint of discrimination. Record Document 27-1 at 12. Cole argues that he sufficiently articulated his complaints against Quality Carriers in his EEOC charge. Record Document 32 at 16-17. The Court reviewed Cole's EEOC charge. On the charge, Cole selected the boxes asserting that "race" and "retaliation" discrimination took place. *See* Record Document 32-10 at 2. Cole also provided a brief narrative, explaining that "I was informed of my discharge by [Beasley] (Terminal Manager) after I previously complained about discrimination to [Ernst]. . . . According to [Beasley] I was discharged for refusing to complete a dangerous dispatch. I believe I have been discriminated against based on my race (Black) and retaliated against in violation of Title VII . . . ." *Id.*

The Court finds that Cole adequately alleged retaliation in his EEOC charge. The charge shows multiple references to retaliation and even references Title VII. Cole's brief explanation of his charges is clear, concise, and would inform an EEOC investigator of the scope of claims he or she is tasked with investigating. The Court finds that Cole exhausted his administrative remedies with the EEOC. The Court will now address whether Plaintiff's retaliation claims survive summary judgment.

ii.   Removal from Pre-Loader Schedule

Cole's claims that Quality Carriers retaliated against him when it eliminated the pre-loader position. Record Document 32 at 7. Specifically, he claims that that Quality Carriers eradicated the position instead of complying with changes to the pre-loader scheduling process that Ernst recommended following Cole's discrimination complaint. *Id.* Cole further alleges that, although the position was formally discontinued, Quality Carriers continued "hand-picking the employees that they would allow to do the pre-loader work." *Id.* Cole also avers that he was "sabotaged" by the schedulers because of his complaint. *Id.*

### 1.  First Prong: Prima Facie Case of Retaliation

As previously stated, Cole must first establish a prima facie case of retaliation, which requires him to show that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between his protected activity and the adverse employment action. *Royal*, 736 F.3d at 400 (quoting *Turner*, 476 F.3d at 348); *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019). Under Title VII, an employee engages in protected activity when he participates in activity protected by Title VII or opposes any unlawful employment practice prohibited by the same acts. 42 U.S.C. § 2000e-3(a). To satisfy the third element of his prima facie case, Cole must present evidence of a causal connection between the protected activity and his termination. At this stage, Cole's burden is less stringent than the causation inquiry at the pretext stage, which requires but-for causation. *Garcia*, 938 F.3d at 243. It is well established that a plaintiff may show a causal link between his protected activity and an adverse employment action by showing close timing between the two. *Feist v. La., Dep't. of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Generally, this timing must be very close to satisfy the causation prong without other evidence of retaliation. *Garcia*, 938 F.3d at 241. Even if a plaintiff is unable to show temporal proximity, he may still satisfy the causation prong "by providing additional evidence" of retaliation. *Id.* at 241 n.1.

Quality Carriers alleges that Cole cannot establish a prima facie case of retaliation because he "advances nothing suggesting that he engaged in protected activity and cannot establish any causal connection between such activity and the adverse employment action." Record Document 27-1 at 13. Cole argues that he engaged in a protected activity by reporting discriminatory acts to Ernst and was retaliated against when the pre-loader position was eliminated in February 2020.

Record Document 32 at 7-8, 17. Considering this information, the Court finds that the first and second elements of the prima facie case have been satisfied.

Turning now to the third element of the analysis, Cole asserts that the pre-loader position was eradicated eight months after he complained to human resources about racial discrimination. In other cases, the Fifth Circuit has held that two-and-a-half months between a protected act and an adverse employment action is sufficiently close in time to demonstrate a causal connection by temporal proximity, *Garcia*, 938 F.3d at 243, while five months is not close enough, *Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 305 (5th Cir. 2020). Here, Plaintiff is unable establish a causal connection by temporal proximity because eight months passed between Cole's complaint of discrimination to human resources and the elimination of the pre-loader driving schedule.

However, Cole alleges that the schedulers sabotaged his work multiple times during those eight months. Record Document 32 at 7.[7] Specifically, Cole claims that he was given a verbal warning after he turned in a "fake" wash ticket for a load that did not require one, resulting in a rejected delivery. *Id.* at 7-8. Cole claims that the white scheduler faked this wash ticket because he was trying to oust him from Quality Carriers. *Id.* at 9. Cole also alleges that white drivers were allowed to drive the pre-loader schedule even after the position was eliminated. *Id.* at 10. A jury could plausibly find that a causal connection exists because of the additional alleged retaliatory acts connecting Cole's complaint of discrimination and the eradication of the pre-loader position. The Court finds that Cole has successfully established a prima facie claim of retaliation.

---

[7] Though Cole claims that the schedulers sabotaged him multiple times, he only articulates a single incident of sabotage in his complaint and deposition.

### 2.  Second Prong: Legitimate, Non-Retaliatory Reason

The next step in the *McDonnell Douglas* framework requires Quality Carriers to offer a legitimate, non-retaliatory reason for eradicating the pre-loader position. *Royal*, 736 F.3d at 400. First, Quality Carriers argues that it discontinued the pre-loader position for all drivers because it became economically infeasible to maintain it. *Id.* at 2. Quality Carriers submitted a copy of the letter sent to drivers informing them of this decision. *See* Record Document 27-6. The letter explains why the position was to be discontinued, the remaining driver categories, and other changes that resulted from economic concerns. *Id.* Additionally, Quality Carriers argues that Cole is unable to prove that the schedulers—the individuals he claims to have sabotaged him—were aware of his discrimination claim or had reason to sabotage him. Furthermore, Quality Carriers alleges that Cole was not the only individual experiencing difficulties with the wash ticket paperwork. Record Document 27-1 at 7. Quality Carriers claims the wash ticket incident was the result of a faulty paperwork process inherited from another entity that caused paperwork issues that impacted all its drivers. *Id.* at 7-8. Quality Carriers avers that the process was addressed and that Cole did not suffer any adverse disciplinary action as a result. *Id.* The Court finds that Quality Carriers has met its burden and satisfied the second prong of the *McDonnell Douglas* framework.

### 3.  Third Prong: Pretext for Retaliation

Because Quality Carriers has produced a legitimate, non-retaliatory reason for eradicating the pre-loader position, the burden shifts back to Cole to demonstrate that its stated reason is pretext for retaliation. *Royal*, 736 F.3d at 400. At this stage, a plaintiff must demonstrate but-for causation, which requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "[T]emporal proximity alone is insufficient to prove but for causation,"

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), but "[t]he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment," *Garcia*, 938 F.3d at 244 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). Among this other evidence may be evidence of disparate treatment or evidence "that the employer's proffered explanation is false or unworthy of credence." *Harville v. City of Houston, Miss.*, 945 F.3d 870, 879 (5th Cir. 2019) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).

Cole is unable to establish that Defendant's legitimate, non-retaliatory reason for eliminating the pre-loader position—that the position became economically infeasible—is pretext for retaliation. Cole's sole argument is that white drivers were allowed to work a pre-loader schedule after it was eliminated. Record Document 32 at 10. Cole cites to a portion of his deposition in support of this assertion. *See* Record Document 32-2 at 139:14-24. However, the portion of the deposition to which Plaintiff cites discusses only his June 2019 discrimination claim—which, again, occurred eight months earlier—and does not address or reference his argument that white drivers were allowed to drive pre-loader schedules after the elimination of the position. Record Document 32-2 at 139:14-24. Cole does not name which drivers he believes were allowed to drive a pre-loader schedule after the position was eradicated, does not argue that black drivers had asked to drive a pre-loader schedule after the position's elimination but were denied, and does not cite to any other portion of his deposition or evidence in the record that would support his claims. Cole does not provide any specific argument explaining why Quality Carriers's claims that it was economically impracticable to maintain the pre-loader position were false or unworthy of credence. Similarly, Cole offers no argument or evidence to refute Quality Carriers's assertions that the issues he faced

with the wash ticket paperwork were the result of a defective process that impacted all of Quality Carriers's drivers.

Cole's deposition testimony—the only evidence he offers in support of his claim—is insufficient evidence for his retaliation claim for the same reasons it was inadequate for his discrimination claim. Namely, Cole fails to provide substantial evidence that Quality Carriers's proffered reasons are pretextual. In short, Cole is unable meet his burden in demonstrating that that the pre-loader position would not have been eliminated but-for his discrimination complaint. Accordingly, Cole's claim cannot survive summary judgment, and Defendant's motion is **GRANTED** with respect to this issue.

### iii.  Termination of Employment

Finally, Cole argues that his ultimate termination from Quality Carriers is retaliation for his complaint of discrimination. Record Document 32 at 19. Cole argues that schedulers intentionally assigned him to transport hazardous materials knowing he lacked the requisite training and safety materials, and he was terminated when he refused to accept those loads. *Id.* at 20. The Court will analyze Cole's retaliation claim below.

#### 1.  *First Prong: Prima Facie Case of Retaliation*

The Court will apply the same three-prong *McDonnell Douglas* factors in determining whether Cole's termination was the result of retaliation. Cole argues that he engaged in a protected activity in making a complaint of discrimination to Ernst and was terminated. Record Document 32 at 17-18. The Court finds that the first and second elements have been satisfied.

As to the requisite causal link Cole must prove, eleven months passed between Cole's discrimination complaint and his termination from Quality Carriers, which is not close enough in time to show a causal connection by temporal proximity. *See Lyons* 964 F.3d at 305 (holding that

five months between the adverse employment action and the protected act was not close enough in time to establish causal connection). However, a causal connection can be established if Cole can prove "a chronology of events from which retaliation may plausibly be inferred." *Mooney*, 538 F. App'x at 454. Cole alleges a series of retaliatory actions that occurred after he made his initial complaint of discrimination to human resources: 1) his work was sabotaged by a scheduler; 2) he received a verbal warning; 3) he was permanently removed from the pre-loader position; 4) he was scheduled for multiple, unsafe loads by schedulers who knew he lacked the requisite safety equipment and training; and 5) he was terminated as a driver at Quality Carriers. Record Document 32 at 18. Considering these additional alleged acts of retaliation, a jury could plausibly find that a causal connection exists. Thus, the Court finds that a prima facie cause of retaliation can be established.

### 2. *Second Prong: Legitimate, Non-Retaliatory Reason*

In its motion, Quality Carriers avers that it terminated Cole because he "consistently refused loads assigned to him," which was a violation of Quality Carriers's policy. Record Document 27-1 at 8. Quality Carriers provided emails between Cole's driving managers and human resources where the driving managers reported two incidents in which Cole refused to transport feedstock because of its low compensation. *Id.; see also* Record Documents 27-9 and 27-10. Quality Carriers also avers that Cole refused to transport loads of kerosene and jet fuel. Record Document 27-1 at 8. Quality Carriers claims that it did not assign Cole any loads that required a respirator or safety equipment, but even if it did, Cole had the requisite equipment and training to transport the hazardous loads. *Id.* at 9-10. In support of its argument, Quality Carriers provided emails and a declaration from its Vice President of Safety that show Cole's most recent safety audit confirmed his possession of a respirator and fit test—a yearly examination to check whether a driver's

20

respirator mask fits properly—the only two requirements for transporting a hazardous load. *See* Record Documents 27-7 and 27-11. The Court finds that Quality Carriers has met its burden and satisfied the second prong of the *McDonnell Douglas* framework.

### 3. Third Prong: Pretext for Retaliation

Because Quality Carriers has produced a legitimate, non-retaliatory reason for its decision, the burden shifts back to Cole to demonstrate that Quality Carriers's stated reasons for his termination are a pretext for retaliation. *Royal*, 736 F.3d at 400. Cole briefly argues that "[s]hortly after his continuing complaints against the QC-192 management, Plaintiff was ordered by the same management to transport hazardous materials without the required safety equipment. Plaintiff refused – and Defendant concedes that an employee may refuse a transport for safety reasons. Despite this policy, Plaintiff was terminated . . . ." Record Document 32 at 20. As for the required safety equipment, Cole claims that he did not own a respirator and that his yearly fit test was expired. *Id.* at 11. However, he admits that his last fit test took place on September 8, 2019. *Id.* This means that Cole's fit test would not expire until September 2020, or four months after he was terminated.

The Court finds that Cole's arguments suffer from conclusory statements without evidence or legal support. Instead of refuting the evidence provided by Quality Carriers, Plaintiff simply reiterates his previous assertions. Cole does not enumerate any safety trainings he believed to be missing in order to transport hazardous materials, does not address his refusal of the non-hazardous feed loads or that his most recent safety audit indicates that he possessed a respirator, and does not explain why his unexpired fit test failed to meet safety standards or Quality Carriers's own safety policies. The Court finds that Cole has failed to meet his burden in proving that his termination

would not have occurred but-for his discrimination complaint. As a result, Cole's claim cannot survive summary judgment, and Defendant's motion is **GRANTED** with respect to this issue.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment [Record Document 27] is **GRANTED** and Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**. A judgment will be issued alongside this ruling.

**THUS DONE AND SIGNED** this 11th day of July, 2023.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE